IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRUCE W. KOENIG, #288937          *
        Plaintiff,
   v.                                   *  CIVIL ACTION NO. JFM-12-690

J. MICHAEL STOUFFER, *et al*.        *
GARY MAYNARD
BOBBY SHEARIN               *
DR. BAUCOM
DR. JOUBERT                 *
COLIN OTTEY
GREG FLURRY                 *
ANSEL SHIRCLIFFE
                    Defendants.    *
                                      ***

MEMORANDUM

PROCEDURAL HISTORY

Bruce Koenig ("Koenig"), an inmate confined at the maximum security facility North Branch Correctional Institution ("NBCI"), filed this civil rights complaint and affidavit on March 5, 2012. He alleged difficulties with his medical treatment and receipt of "accommodations" at NBCI associated with multiple conditions including his skin and respiratory allergies; back, neck, and head pain due to spondylosis and migraines; feet and ankle problems; a left shoulder injury causing loss of strength and mobility and pain; a balance disorder known as Menier's Disease and concomitant hearing loss; torn meniscus injuries to both knees; and a hip injury. ECF No. 1. Koenig claimed that staff disregards his ailments in order to engage in "cost-savings measures" rather than support his health and well-being. He also seeks to invoke

pendant jurisdiction1 and prays a jury trial.  Koenig requests damages and declaratory and injunctive relief.

In his 85-page amended complaint Koenig reiterates his original claims and adds an additional claim regarding his alleged ventricular tachycardia,[2] which he contends requires full diagnostic measures to determine whether surgery is needed.  ECF No. 11.  He further added three defendants, Olivia Ryan, Lt. Harbaugh, and Sgt. Bowman, to the party listing.[3]  Koenig again states that defendants' decisions with regard to the implementation of previously-diagnosed accommodations are based on financial considerations and that they have placed issues of cost and inconvenience over his needs.  *Id*.

PENDING MOTIONS

Defendants have filed motions to dismiss or, in the alternative, motions for summary judgment.  ECF Nos. 21 & 27.  Although Koenig was provided notice of those filings and afforded several extensions to file responses, defendants' pleadings, construed as motions for summary judgment, remain unopposed.[4]   Oral hearing is not necessary.   The matter may be determined on the briefing before the court.  *See* Local Rule 105.6.  (D. Md. 2011).

---

[1] Koenig sites to a common-law tort, the Maryland Declaration of Rights and claims the defendants violated Division of Correction Directive 200.0001, which lists the rights to be provided to Division of Correction inmates.

[2] Ventricular tachycardia  is a rapid heartbeat that starts in one of the ventricles of the heart.  *See* www.ncbi.nlm.nih.gov.

[3] Koenig seemingly claims that Harbaugh and Bowman denied him access to a cotton blanket and an extra chair, both needed due to his allergies and back problems. ECF No. 11 at pgs. 26-27. He further claims that Ryan has refused to release his medical records to him. *Id*. at pgs. 46-47.

[4] Koenig has filed a motion for clarification of the record, asking if a copy of his amended complaint has been served on defendants.  ECF No. 36.  The motion shall be denied as moot.  Defendants were made aware of and provided a copy of the amended complaint.

STANDARD OF REVIEW

Under revised Fed. R. Civ. P. 56(a):

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility

to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, the court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

DISCUSSION

Facts

Defendants acknowledge that Koenig is a 64year-old male with a myriad of medical problems, including asthma, multiple allergies, Meniere's disease,[5] and back pain associated

---

[5] Meniere's disease can cause severe dizziness, a roaring sound in your ears called tinnitus, hearing loss that comes and goes and the feeling of ear pressure or pain. It usually affects just one ear and is a common cause of hearing loss. Scientists believe that it has to do with the fluid levels or the mixing of fluids in the canals of your inner ear. Symptoms occur suddenly and can happen as often as every day or as seldom as once a year. An attack can be a combination of severe dizziness or vertigo, tinnitus and hearing loss lasting several hours. *See* www.nlm.nih.gov/medlineplus/menieresdisease.html.

with possible anklylosing spondylitis[6] ("AS"). ECF No. 21 at Exs. 1-4. They argue that he is being provided a "wide range of medications," and has been authorized accommodations at NBCI including a cane, special shoes, bottom tier status with a potential move to an "old age tier," bottom bunk status, extra pillows, and "no work status." ECF No. 21 at Exs. 1-4. In February of 2012, he was seen in the Chronic Care Clinic ("CCC") and evaluated for back pain. His examination was unremarkable except for posterior tenderness and a moderately reduced range of motion. His medical alert was renewed for bottom tier/bunk and an extra pillow. Further, he was restricted from weight and heavy lifting on a temporary basis. In May of 2012, consultations were to be generated for a rheumatologist, possible physical therapy for the AS and back pain, and an audiologist for his hearing impairment. He was to be scheduled for a comprehensive physical with Dr. Joubert and saw her on May 22, 2012. ECF No. 21 at Exs. 1-4; ECF No. 27 at Ex. B. Dr. Joubert found Koenig to be uncomfortable, with poor muscle tone of the cervical spine and kyphosis[7] of the lumber spine. An x-ray of the cervical spine found moderate to severe degenerative changes, most significant at C4-C5 and C6–C7 levels. The thoracic x-ray showed mild to moderate degenerative changes  ECF No. 27 at Ex. B.

On June 7, 2012, Koenig was seen at Kernan Hospital for a rheumatology consult for evaluation of possible ankylosing spondylitis. Dr. Bernadette Siaton found it unlikely that he had the condition, but instead indicated that he had a mechanical degeneration of his spine, given

---

[6] Ankylosing spondylitis is a long-term disease that involves inflammation of the joints between the spinal bones, and the joints between the spine and pelvis. *See* www.ncbi.nlm.nih.gov.

[7] Kyphosis is a curving of the spine that causes a bowing or rounding of the back, which leads to a hunchback or slouching posture. See www.ncbi.nlm.nih.gov.

his history of heavy lifting and motorcycle accidents. She noted he had a decreased range of motion in the lumbar spine and numerous tender points, but normal reflexes and symmetric muscle tone and bulk. She recommended that he continue on his pain regimen of Motrin and Ultram and that a lumber spine and pelvic x-ray be obtained. ECF No. 27 at Ex. B. Dr. Siaton also recommended that Koenig may benefit from a medical mattress to help his mechanical back pain.

Subsequent films of the lumbar spine and pelvis showed no indication of fusion of the sacroiliac joints. Based on a review of these pictures, Dr. Siaton concluded that Koenig had "only degenerative changes of the lumber spine without evidence of ankylosing spondylitis." ECF No. 27 at Ex. B. She indicated that the proposed plan for pain medication and other recommendations should continue.

Legal Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but

6

failed to either provide it or ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).  Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).  "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844.   If the requisite subjective knowledge is established, an official may avoid liability  "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendants actually knew at the time. *Brown* 240 F. 3d at 390; *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

The record provided to this court illustrates that Koenig was repeatedly seen by health care personnel and received tests, consultations, and medications for his many medical problems.  The basic issue appears to be Koenig's concern with the course of treatment provided to him at

7

NBCI, as opposed to his previous institutional assignment in Jessup, Maryland which he seemingly contends was more accommodating to his medical conditions.

An inmate's disagreement as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact. *See O'Connor v. Pierson,* 426 F.3d 187, 202 ($2^d$ Cir. 2005) ("lay people are not qualified to determine ... medical fitness, whether physical or mental; that is what independent medical experts are for."); *Fleming v. Lefevere,* 423 F.Supp.2d 1064, 1070 (C.D.Cal.2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

Further, § 1983 liability on the part of supervisory defendants requires a showing that: "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990) (internal citations omitted); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (supervisory liability for an inmate's beating by prison guards).

The served state defendants maintain that they cannot be held liable under a *respondeat superior* theory. The court observes that defendants Maynard, Stouffer, and Baucom are all administrators and executives in the Maryland Division of Correction. Likewise, Warden Shearin and Correctional Supply Officer Supervisor Shircliffe are supervisory officials at NBCI. There are no allegations that they were personally involved in Koenig's medical care and lack of accommodations and Koenig has provided no evidence demonstrating supervisory liability on their part. *See Shaw v. Shroud*, 13 F.3d 791, 799 (4th Cir. 1994). In light of these omissions and

Koenig's failure to show an underlying constitutional violation, the claims against defendants shall be dismissed.[8]

CONCLUSION

For the aforementioned reasons, the court shall grant defendants' motions for summary judgment and enter judgment in favor of defendants and against Koenig.[9] A separate order follows.

Date:  February 19, 2013                    ____/s/_____
                                            J. Frederick Motz
                                            United States District Judge

---

[8] The court observes that the Clerk did not amend the docket to include defendants Harbaugh, Bowman and Ryan as defendants.  The docket shall be amended accordingly.  In light of the finding of the court, the complaint against these defendants shall be dismissed.

[9] Title 28 U.S.C. § 1367(a) states, in part, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Supplemental jurisdiction, also called pendant jurisdiction, only includes "other claims" related to "claims *in the action*" that convey original jurisdiction. Under supplemental jurisdiction, the federal claim acts as a jurisdictional "crutch." David D. Siegel, Commentary on 1990 Revision, appended to 28 U.S.C.A. § 1367 (West 1993). The complaint presents no federal claims to which the state law claim could attach to convey supplemental or pendant jurisdiction.  In the absence of establishing a constitutional deprivation, Koenig does not show that this court can exercise supplemental jurisdiction over his state claims under common-law tort and the Maryland Declaration of rights.  In addition, an alleged violation of a state agency regulation does not comprise a federal claim.